We'll hear argument next in Hyshaw v. Commissioner of Social Security Administration, 1992. Brandy Smith v. Lateefka Hyshaw The central issue in this case is about whether an ALJ has a duty to develop the record for the claim it has a lifelong history of cognitive deficits. The record only contains IQ scores from her early childhood, and both an examining source retained by the Social Security Administration as well as her treating provider recommended an updated intelligence evaluation. In this case, Ms. Hyshaw was receiving Social Security benefits as a child based in part on her cognitive deficits. She was in special education at a very early age. She had to repeat a grade. She was placed in a small setting, and even despite all these services, she still had to drop out of school in ninth grade at age 16 because, I'm sorry. Even if you had updated material related to intelligence, since the ALJ's decision seemed to be based mostly on residual functional capacity, how would, even if you had this material, how would it have changed the outcome of the case? Well, in this case, there's evidence that her cognitive impairment is organic in nature. At the age of eight, her IQ score was 91. By the time she was 12, her IQ score had dropped to 76, full scale. Performance IQ was 73. And as an adult, there started to become evidence that she started to suffer memory deficits, even though that wasn't evidence as a child. So the concern here is we would be guessing to say that her cognitive functioning had stabilized, so that the assessment of her functioning based off of her IQ score at age 12 is actually reflective of what her residual capacity is. The evidence says a lot about what she cannot do, but it doesn't actually say what she's capable of doing. It's unclear if she's even able to meet the demands of a very simple job, especially because she attempted to do so and was unable to do that and lost her job after only a month. The judge's opinion seems to say that she looked at all her other events other than IQ and recognizes that she has severe problems with respect to IQ, but nonetheless, there's evidence that she's able to do certain appointments. I guess I've got to go back to the same question. Even if you had updated intelligence information, how would that change the outcome of this case? Well, the RFC that the ALJ found was simply limitations from complex instructions, detailed tasks, and a job that required minimal reading and writing. The evidence of the record does not even reveal that she can do that. His RFC wasn't based on the medical pain of the examiner who found that there actually needed to be more development because she had suspected cognitive deficits and even she couldn't accurately assess them. And the review opinion was also based on old IQ scores. And so even though the record may indicate she can do very minimal, which may I say most of her activities of daily living are assisted by someone else, she can't even do basic math computations without the assistance of someone else, the RFC cannot be said to actually be supported by substantial evidence. Even though the ALJ found these limitations, they're not actually rooted in any of the evidence that's available. Maybe I've got your case with your claim, the claim that you're making wrong. Do you think that there is a gap in the record related to intelligence measure? Correct. And you don't seem to be going after those portions of the opinion where the ALJ found that she could perform certain tasks. Well, I did get into that to prove that it was harmful. And the reason why it is harmful is because even the limitations he found at step four for the RFC, which is based on his reliance of an incomplete record, she performed a job with those exact demands and was not capable of doing so. And the argument that I'm making is that the additional development was required because in a case where an ALJ is guessing about cognitive functioning instead of updating the record despite their formative duty, we can't actually say that she could perform that RFC and ultimately it's no big deal because she could perform some simple job in the national economy. There is no evidence that she can. The evidence shows that she can't do a lot of things, include perform a job with the limitations found at the RFC. And so the ALJ is wrong not to have ordered more intelligence testing because if it had been ordered, it might demonstrate that the evidence that he relied on, she relied on, with respect to being actually able to perform a job would be undermining something. Yes. I think it speaks volumes that the examining psychologist who I have seen conduct intelligence evaluations herself, but this only pertains to psychiatric evaluations, says that there are suspected deficits and this must be assessed. And the fact that her treating neurologist was so concerned about her learning disability and poor memory just on initial evaluation that she needed to determine her baseline functioning. So the idea is really, in this case, we don't really know what her cognitive functioning is because it hasn't been assessed since she was 12. And her functioning has been documented to degrees drastically. Her IQ score dropped 15 points from the age of 8 to 12. No one knows why. She does have an underlying seizure disorder. No one even assesses if that has affected her cognitive functioning or not. But certainly it says a lot that an ALJ who doesn't have any medical expertise, most certainly not in mental health, would say the record is fine, but the examining psychologist and a treating neurologist says we don't really have enough to say what her functioning is, but it seems very bad. So it's your position that this record, that there is no work that your client is capable of performing? I can't definitively say. I would be guessing. But what I can say is work at the level that was found by the IRC, she cannot perform. And the record contains so much evidence revealing what she cannot do that it is enough to raise the question of would she even be able to perform a job that's SVP1 instead of SVP2. She can't do a lot of basic functioning. She can't drive. She can't cook. She can't read. She can't fill out applications on her own. She can't even pass the GED test. She has to get assistance for her medical treatment, whether it's from her sister or someone else. Even Dr. Lee noted that. One of her primary providers even said she needs to be taught life skills. And that evidence shows that it's highly questionable whether she can even do the demands of a simple job because, again, when she did perform a simple job, she would let go because she couldn't keep up with the pace. She couldn't remember simple directions. And even despite her cognitive functioning, she continues to try but has been unsuccessful. Thank you. Is there some time for rebuttal? Good morning. May it please the court, my name is Daniella Colenso on behalf of Andrew Saul, the Commissioner of Social Security. What Hyshaw's argument here overlooks is that the burden was on her to prove disability and, more particularly, to prove that she was more limited than the RFC finding that the ALJ arrived at. And here the ALJ based its decision on a fully developed record. Hyshaw's argument actually points that out. She states, and I quote, there was so much evidence speaking to what, to her cognitive limitations. And the ALJ bases RFC on that evidence of her limitations. Hyshaw also overlooks that while the most recent IQ scores were in 2007, in 2011, Ms. Kohler, a school psychologist, performed a psychological evaluation of Ms. Hyshaw when she was 17. This was only three years before the application date. And she looked at these older... What does this evaluation, how is it conducted and what does it tell you? What it tells us is that there were these 2007 scores and Ms. Kohler looked at them and looked at her current functioning and said that those scores, and I quote, continue to represent her cognitive ability. What were the scores? They were, there was a full scale score of 76, which Ms. Kohler explained put her in the borderline range. She also stated that those scores showed low average verbal reasoning and working memory skills and delayed processing speed, which the ALJ considered, and which is clearly considered in the RFC finding, which allows for simple work and job demonstration of, demonstration of job tasks as well as minimal reading and writing requirements, which further incorporates Ms. Hyshaw's testimony about why she dropped out of school in 2011 and why she was unable to perform her work in the sub shop in 2015. She stated that both, in both instances, she could not learn as fast as other people. So in the RFC here we have limitations which accommodate those particular restrictions. What sort of job did the administration conclude she could do? At step five, the vocational expert testified that an individual with the RFC and vocational profile of Ms. Hyshaw could perform work as a hand packager as well as a commercial cleaner, which are both unskilled tasks which, per the vocational expert's testimony, could be performed within those RFC limitations. What is a vocational cleaner? Excuse me? A commercial cleaner. What is a commercial cleaner? A commercial cleaner, from my understanding, is someone who, I honestly don't know, I assume would clean office buildings or I don't, I'm not sure. Ms. Hyshaw did not make any argument that the step five finding was unsupported by substantial evidence. She only, in her reply brief, suggested that the ALJ had some burden to prove she could not perform her work as a sub shop maker, though that misinterprets the burden at step five. There's only a limited shift to the ALJ. The ALJ's burden at step five was to provide substantial evidence of jobs that existed in significant numbers in the national economy, and he did so by obtaining vocational expert evidence, which Ms. Hyshaw does not suggest was insufficient. The ALJ's RFC was also supported by substantial evidence, including Dr. Toton's review of the record and including Ms. Kohler's evidence that her IQ scores remained consistent in 2011, and that is notable because, as Ms. Hyshaw herself points out, the SSA's internal policy manual, the POM, says that IQs tend to stabilize around age 16, 17. In 2011, Ms. Hyshaw was 17 years old, I believe. Sixteen years and nine months, I think, is exact. And that's important. We have education records showing she had difficulty with memory and reading and writing. We have later records during the relevant period showing the same difficulties. And Hyshaw has not shown that the lack of cognitive testing, the lack of updated cognitive testing was so material to the ALJ's determination that it was irrational for him to determine her RFC without it. As Hyshaw points out herself, there was so much evidence of her cognitive function. And to the extent that she testifies that she is very limited, unable to shower on her own, unable to go outside alone, the ALJ also considered inconsistent evidence suggesting that she was able to watch her sister's children. On one occasion she brought her sister's child, who I believe would have been two or four at the time, a very young child, to a doctor's appointment on her own, which does undermine her central allegation that she couldn't do anything on her own. The evidence here included education records as far back as 2006, medical records as far back as 2011, including a neurological evaluation. And they show that she regularly reported to her doctors stress about inability to find a job  The record also shows that Ms. Hyshaw actually was able to qualify for GED testing. She was two starts. Isn't the central claim here that the record is incomplete? There's a gap in the record because there isn't updated IQ testing? That's the claim. Yes, Your Honor. The claim isn't that she's not actually capable of doing certain kinds of work. The claim is that there's a gap in the record. And why isn't there a gap in the record? Because based on all this evidence that Ms. Hyshaw herself outlined, there was sufficient evidence to make a determination on the RFC finding. Hyshaw is not shown, and the record does not show, that updated testing would have proven that she was more limited than the RFC finding. There is no showing that getting these updated IQ scores would have answered any question that the record did not state. It would just have made more records. If we send these cases back for more remand, it just goes back and forth, where the ALJ, who was responsible for determining the sufficiency of the evidence in the record, needed more evidence where he had evidence speaking to cognitive function. He had evidence of learning disability. He had opinion evidence supporting that Hyshaw could perform simple work. And in this case, this is a good case with a longitudinal record speaking directly to the limitations. It was Hyshaw's burden to show the additional records would have shown she was more limited, and she has not done so. Thank you very much. Thank you. The Commissioner's Attorney specifically says it was our burden to prove that. I'm sorry. The Commissioner's Attorney specifically said it was Ms. Hyshaw's burden to prove that she was unable to perform work. However, she forgets that the regulations and the case law says an ALJ has an affirmative duty to develop the record when it's clear that it does not have sufficient evidence to make an informed decision. In this case, there is no question she has cognitive deficits. He even evaluated her cognitive deficit under 12.02, meaning it's organic in nature. He acknowledged that her cognitive functioning had decreased over time. Social Security regulations also indicate that IQ scores are only valid for two years. Even though the Commissioner's Attorney refers to the 2011 IEP, the point I made in my briefing is that she's assuming that the school counselor interchangeably used the term psychological evaluation and cognitive evaluation. She makes it very clear that she performed a psychological evaluation, but there's no updated testing. She just simply did a brief description of saying, okay, it looks like the psychological evaluation is still accurate. To assume that that automatically means that her cognitive functioning has remained the same, that wasn't the purpose of the school psychologist evaluation of Ms. Hyshaw. She evaluated her to determine if the small settings, the special education classroom setting, the additional services she received was still appropriate for a young lady who had already failed. It was 16 years old. She does say that the previous evaluation in 2007 continues to represent her cognitive ability. She does say that. Whether she's qualified to say that as a psychologist, I don't know, but that's the statement. Okay. Well, even if we assume that that is accurate, the concern is Ms. Hyshaw has the origin. The argument is, as Judge Eaton pointed out, rests in large part on gaps in the record that the ALJ needed to correct. And there was a gap in the record because we can't assume that these IQ scores, even for assuming they're valid through the age of 16, is still an accurate reflection of her cognitive functioning. She has an organic cognitive impairment, meaning it changes over time. The evidence during her adulthood reveals that her cognitive functioning did worsen because she goes from having an acceptable memory index of 88. You disagree with that assessment then? I do disagree. That's not a gap. That's just a disagreement with something that's in the record. I respectfully disagree because in a case with an organic mental disorder, it will change over time. And so even though the regulations say it can be presumed to remain the same, those regulations do not address an organic mental disorder. That's typically something you would see under Listing 12.05 for an intelligence disorder. But we would have to ignore that the nature of her impairment is that it will worsen over time. Just for record-keeping purposes, am I right? You also make an argument about the lack of substantial evidence. Correct. There is a lack of substantial evidence because the record as it stands has IQ scores that don't reflect her current cognitive functioning. The medical opinion in the record that he claims to afford significant weight to specifically says that formal intelligence evaluation should be ordered. And the other medical opinion that he relies upon is someone who never saw Ms. Hyshaw, in her opinion, I'm sorry, is remarkably inconsistent with everyone who's examined Ms. Hyshaw. Every person who's come into physical contact with her immediately recognizes she has significant cognitive deficits that are interfering with her basic functioning, even just to articulate her medical history. And so we can't assume that the RFC that's based on this evidence is actually supported. And just to quickly, briefly point out that it's step five. I know that the commissioner brought, the commissioner's attorney brought that up. The jobs found in step five have the same mental demands as a job she attempted to perform as a sandwich maker. And to assume that, oh, well, even though she couldn't keep her job as a sandwich maker, she would certainly be able to do jobs with the same mental demands. That's a hand packer. A hand packer? A hand packer. I can't remember if it's a hand packer or a hand packager. I'm sorry. They're two different jobs. From my memory, it is someone who is simply just picking up small items and packing them into a box or into something of that nature. But if you think about a sandwich, it is bread, you put ingredients on it, pass it down the line. The mental demands are remarkably the same. It's not a multiple-step job. It's very simple. You should be standing on place and doing one or two steps with your hands. She could not do that. She attempted to do it and said that she couldn't keep up with the pace and she couldn't remember what she was supposed to be doing. I think that that speaks volumes to what she's actually limited in doing. But, again, and contrary to what the commissioner's attorney is arguing, even though the record shows everything she cannot do, the ROC finding is about what a person can do despite their limitations. Thank you very much.